FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 2 9 2007

MATTHEW J. DYKMAN
CLERK

**IN THE DISTRICT COURT OF THE UNITED STATES**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. _07-615 JC_ |
| ) | |
| TOBY MARTINEZ, ) | Count One: Conspiracy (18 U.S.C. § |
| RAUL PARRA, ) | 371); |
| MANNY ARAGON and ) | Counts Two through Nine: Frauds |
| SANDRA MARTINEZ, ) | and Swindles (Mail Fraud) (18 |
| a/k/a "Sandra Mata," ) | U.S.C. §§ 1341 and 1346); |
| ) | Counts Ten through Twenty One: |
| Defendants. ) | Money Laundering (18 U.S.C. § |
| ) | 1956); |
| ) | Counts Twenty Two through Twenty |
| ) | Six: Laundering of Monetary |
| ) | Instruments (18 U.S.C. § 1957); |
| ) | Forfeiture (18 U.S.C. § 981(a)(1)(C) |
| ) | and 28 U.S.C. § 2461(c)); |
| ) | Forfeiture (18 U.S.C. § 982). |

## I N D I C T M E N T

THE GRAND JURY CHARGES:

### INTRODUCTION

1. New Mexico law provides for the establishment of a Metropolitan Court in Bernalillo County (the "Metro Court"). The Metro Court is a court of limited jurisdiction, hearing certain civil cases in which the amount in controversy does not exceed $10,000.00, misdemeanor criminal offenses, traffic infractions, and felony preliminary hearings. At all times relevant to this Indictment, the Metro Court had a court administrator (the "Administrator") who supervised all matters relating to administration. In or about the year 1995, the Judges of the Metro Court appointed **TOBY MARTINEZ** as the Administrator. **TOBY MARTINEZ** served as the Administrator until in or about June 2003.

2.  During the New Mexico Legislative Session of 1997, the Judges of the Metro Court and **TOBY MARTINEZ**, in his capacity as Administrator, sought the passage of legislation for the construction of a new Metro Court building.  The legislation was not passed.

3.  The Judges of the Metro Court and **TOBY MARTINEZ** in his capacity as Administrator sought the passage of similar legislation during the Regular Legislative Session of 1998.  The legislation was passed by the State House of Representatives and by the State Senate, but was vetoed by Governor Gary Johnson.  A modified version of the bill was passed during a Special Legislative Session later that year, and was signed by the Governor.  The bill as passed by the Legislature and signed by the Governor provided for the issuance by the New Mexico Finance Authority of up to $46,500,000.00 in revenue bonds for the purpose of acquiring real property for and designing and constructing a new court building for the Metro Court.

4.  The President Pro Tem of the New Mexico State Senate during the 1997 and 1998 Legislative Sessions was **MANNY ARAGON**.  **MANNY ARAGON** remained a member of the New Mexico State Senate until in or about the year 2004.

5.  On or about March 17,1999, the Judges of the Metro Court hired a firm called Design Collaborative Southwest ("DCSW") to provide architectural services in connection with construction of the new building.  The senior partner in charge of the Metro Court project for DCSW was MARC SCHIFF.  DCSW contracted with KEN SCHULTZ, a former mayor of the City of Albuquerque, as a lobbyist during this time period.

6.  On or about October 15, 2002, the Judges of the Metro Court hired Integrated Control Systems, Inc. ("ICS"), to install audio-visual equipment and communications

2

wiring in the new building (the "A/V Contract"). ICS hired a firm called Datcom, Inc., as a subcontractor. The sole proprietor of Datcom was MANUEL GUARA.

7. On or about July 30, 2003, **SANDRA MARTINEZ** a/k/a "Sandra Mata" (hereinafter "**SANDRA MARTINEZ**") incorporated a company called Smart Solutions, Inc., listing herself as president and describing the company as providing information software consulting. **SANDRA MARTINEZ** is the wife of **TOBY MARTINEZ**. The principal address of Smart Solutions, Inc., was the same as that of the marital home of **SANDRA MARTINEZ** and **TOBY MARTINEZ**.

8. The final cost of purchasing real property for and design and construction of the new Metro Court building and associated construction projects such as the Metro Court garage (hereinafter collectively the "Metro Court Construction Project") was approximately $83,138,505.00. The construction of the new Metro Court building was completed in or about January 2004.

9. During the Metro Court Construction Project, the defendant **RAUL PARRA** was a partner in an engineering firm called P2RS. While the defendant **RAUL PARRA** and his firm, P2RS, were subcontractors to DCSW in connection with DCSW's contract for architectural services and design, they were not contractors or subcontractors in connection with the A/V Contract described in Paragraph 6, above.

3

## COUNT ONE

1. Paragraphs 1 through 9 of the Introduction, above, are hereby incorporated by reference as if realleged and recited in full.

2. In or about and between the years 1999 and 2005, both dates being approximate and inclusive, in the State and District of New Mexico, in Bernalillo and Santa Fe Counties, and elsewhere, the defendants **TOBY MARTINEZ**, **RAUL PARRA, MANNY ARAGON** and **SANDRA MARTINEZ,** with others known and unknown to the Grand Jury, did knowingly and unlawfully combine, conspire, confederate and agree together and with each other to commit certain offenses against the United States, as follows:

    (a)    To cause to be mailed and to be delivered or received from the United States Postal Service, or any private or commercial interstate carrier, any document, matter or thing in furtherance of a scheme and artifice to defraud the State of New Mexico and the People of the State of New Mexico of money and property, and to obtain money and property by means of false and fraudulent pretenses, in violation of Title 18, United States Code, Section 1341;

    (b)    To cause to be mailed and to be delivered or received from the United States Postal Service, or any private or commercial interstate carrier, any document, matter or thing in furtherance of a scheme and artifice to defraud the State of New Mexico and the People of the State of New Mexico of their right to have their business and their affairs, and particularly the transaction of the official business of the Bernalillo County Metropolitan Court, conducted honestly and impartially, free from

4

corruption, fraud, dishonesty, and improper and undue influence, in
violation of Title 18, United States Code, Sections 1341 and 1346; and

(c)    Knowing that the property involved in a financial transaction represented
the proceeds of some form of unlawful activity, to conduct and attempt to
conduct such a financial transaction (1) with the intent to promote the
carrying on of specified unlawful activity, and (2) knowing that the
transaction was designed in whole or in part to conceal and disguise the
nature, the location, the source, the ownership and the control of the
proceeds of specified unlawful activity, in violation of Title 18, United
States Code, Section 1956(a)(1).

## MANNER AND MEANS

3. It was a part of the conspiracy that the defendants **TOBY MARTINEZ**, **RAUL
PARRA**, **MANNY ARAGON** and **SANDRA MARTINEZ** and others known and unknown
to the Grand Jury would, by deceit, craft, trickery and dishonest means, seek to profit
from the Metro Court Construction Project, in that the defendants would submit and
approve for payment false invoices and excessive requests for payment for work on its
design and construction.

4. It was a further part of the conspiracy that the defendants would subvert the
Metro Court procurement process by knowingly and intentionally making inflated
contract and contract modification proposals, and by causing such inflated contracts
and contract modifications to be approved.

5. It was a further part of the conspiracy that the defendants would seek
appropriations and supplemental appropriations from the legislature of the State of New
Mexico for the purpose, in whole or in part, of making state funds available to pay the

false and fraudulent invoices, excessive requests for payment, and inflated contracts and contract modifications.

6.  It was a further part of the conspiracy that the defendants would utilize the contract for architectural services and design awarded to DCSW, and the A/V Contract awarded to ICS, as vehicles for profiting from the construction of the new Metro Court.

**The DCSW Contract**

7.  The defendants and others known and unknown to the Grand Jury would utilize the contract for architectural services and design awarded to DCSW to profit from the Metro Court Construction Project by, among other means, the following:

8.  MARC SCHIFF, the DCSW partner in charge of implementation of the contract, would submit to the Metro Court Administrator's Office false invoices and excessive requests for payment to DCSW.

9.  The defendant **TOBY MARTINEZ** and others would authorize the payment of the DCSW false invoices, and would cause them to be submitted, via United States Postal Service and other means, for payment by the State of New Mexico.

10.  The defendants would cause the Financial Control Division of the New Mexico Department of Finance and Administration in Santa Fe, New Mexico,  to issue checks drawn upon public funds in payment of the false DCSW invoices, and to send such checks, via United States Postal Service and other means, to the Accounting Department of the Bernalillo County Metropolitan Court in Albuquerque, New Mexico.

11.  MARC SCHIFF would make cash payments to KEN SCHULTZ from the proceeds of the false DCSW invoices.

12.  KEN SCHULTZ would keep some of the cash payments for himself and convey the rest to the defendant **TOBY MARTINEZ**.

6

13. MARC SCHIFF would make cash payments to the defendant **MANNY ARAGON** from the proceeds of the false DCSW invoices.

14. The proceeds of fraud from DCSW's contract received by the defendant **MANNY ARAGON** would not be compensation for legitimate services rendered, but would constitute the share of the defendant **MANNY ARAGON** in the proceeds of jointly undertaken criminal activity.

## The A/V Contract

15. The defendants and others known and unknown to the Grand Jury would utilize the A/V Contract to profit from the Metro Court Construction Project by, among other means, the following:

16. The defendants **TOBY MARTINEZ, RAUL PARRA, MANNY ARAGON** and others known and unknown to the Grand Jury would subvert the Metro Court's procurement process by including millions of dollars of fraud in contract proposals and contract modifications for the installation of audio-visual equipment and communications wiring in the new building (the "A/V Contract").

17. The defendant **RAUL PARRA** would recruit a subcontractor for the purpose of installation of audio-visual equipment and communications wiring in the new Metro Court building, namely, MANUEL GUARA and his company, Datcom, Inc.

18. The defendant **RAUL PARRA** would recruit ICS as the general contractor on the A/V Contract, at least in part because ICS was exempt from competitive bidding requirements as a company certified by the State of New Mexico for participation in public construction projects.

19. MANUEL GUARA would submit inflated bids to ICS on the A/V Contract and on modifications to the A/V Contract, and make inflated requests for payment in

7

invoices that he submitted to ICS.

20. ICS would incorporate the invoices submitted by MANUEL GUARA into its own invoices, which would be submitted to the Administrative Office of the Metro Court and authorized for payment by the defendant **TOBY MARTINEZ** and others.

21. ICS, as the general contractor on the A/V Contract, would pay Datcom from the proceeds of payments received from the State of New Mexico.

22. After paying the legitimate bills of his own subcontractors on the A/V Contract, MANUEL GUARA would transfer to the defendant **RAUL PARRA** and to bank accounts controlled by the defendant **RAUL PARRA** much of the proceeds of Datcom's invoices to ICS.

23. The defendant **RAUL PARRA** would keep some of these proceeds for himself, and would transfer the remainder of the proceeds to the defendants **TOBY MARTINEZ, MANNY ARAGON** and **SANDRA MARTINEZ**.

24. The defendant **RAUL PARRA**, who was neither a contractor nor a subcontractor on the A/V Contract, would retain approximately $773,000.00 in fraudulent proceeds of excessive requests for payment that were transferred to him by MANUEL GUARA.


**Money Laundering**

25. It was a further part of the conspiracy that the defendants would conduct financial transactions with the proceeds of payments by the State of New Mexico, in order to promote the carrying on of the underlying criminal activity, that is, Frauds and Swindles (Mail Fraud).

26. It was a further part of the conspiracy that the defendants would conduct

financial transactions with the proceeds of payments by the State of New Mexico, in order to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of their jointly undertaken criminal activity.

27.  The defendants and others known and unknown to the Grand Jury would conduct financial transactions with the proceeds of payments by the State of New Mexico by, among other means, the following:

28.  The defendant **RAUL PARRA** would open a bank account in the name of "Parra & Gagnon Consulting" that would be used as a vehicle to conceal and disguise proceeds received from MANUEL GUARA.

29.  The defendant **SANDRA MARTINEZ** would open a bank account in the name "Smart Solutions" that would be used as a vehicle to conceal and disguise proceeds received from the defendant **RAUL PARRA**.

30.  MANUEL GUARA would transfer proceeds of excessive requests for payment to the defendant **RAUL PARRA** and to  "Parra & Gagnon Consulting."

31.  The defendant **RAUL PARRA** would transfer proceeds of excessive requests for payment received from MANUEL GUARA to "Smart Solutions."

32.  The defendant **RAUL PARRA** would transfer proceeds of excessive requests for payment to **MANNY ARAGON**, "**MANNY ARAGON** Attorney at Law" and "Law Offices of **MANNY ARAGON**."

33.  The proceeds of fraud on the A/V Contract received by the defendant **MANNY ARAGON** would not be compensation for legitimate services rendered, but would constitute the share of the defendant **MANNY ARAGON** in the proceeds of jointly undertaken criminal activity.

**The Central Role of Martinez and Aragon**

34. It was a further part of the conspiracy that the defendants **TOBY MARTINEZ** and **MANNY ARAGON** would control and seek to control the actions of their co-conspirators through their real and apparent authority over the expenditure of public funds.

35. The defendants **TOBY MARTINEZ** and **MANNY ARAGON** would control and seek to control the actions of their co-conspirators by, among other means, the following:

36. The defendant **TOBY MARTINEZ**, as Administrator, would exercise and appear to exercise authority over the selection of contractors and subcontractors on the Metro Court Construction Project.

37. The defendant **TOBY MARTINEZ** would exercise and appear to exercise authority over the approval for payment of invoices submitted to the Metro Court.

38. The defendant **MANNY ARAGON** would exercise and appear to exercise influence over the availability of public funds for the Metro Court Construction Project.

39. The defendant **MANNY ARAGON** would exercise and appear to exercise influence over the selection of contractors and subcontractors on other publicly funded construction projects and other public works.

40. Out of total capital expenditures of approximately $83,138,505.00 for the Metro Court Construction Project, the defendants **TOBY MARTINEZ, RAUL PARRA, MANNY ARAGON** and **SANDRA MARTINEZ**, and others known and unknown to the Grand Jury, would defraud the State of New Mexico of approximately $4,200,000.00.

41. The defendants **TOBY MARTINEZ** and **SANDRA MARTINEZ** would receive approximately $2,050,000.00 from the proceeds of the fraud.

42. The defendant **MANNY ARAGON** would receive approximately $700,000.00 from the proceeds of the fraud.

43. It was a further part of the conspiracy that the defendants **TOBY MARTINEZ**, **RAUL PARRA**, **MANNY ARAGON** and **SANDRA MARTINEZ**, and others known and unknown to the Grand Jury, would attempt to keep secret the existence of the conspiracy.

44. In furtherance of the conspiracy, and to effect the objects thereof, in the State and District of New Mexico, the defendants committed, among other overt acts, the following

## OVERT ACTS

### Overt Acts Pertaining to DCSW

45. On or about May 26, 2000, the defendant **TOBY MARTINEZ** approved payment of an invoice submitted by MARC SCHIFF on behalf of DCSW to the Bernalillo County Metropolitan Court Administrator's Office in the amount of $14,814.00.

46. On or about May 30, 2000, the defendant **TOBY MARTINEZ** caused a payment voucher reflecting the invoice described in Paragraph 45, above, to be delivered via the United States Postal Service to the Financial Control Division of the New Mexico Department of Finance and Administration in Santa Fe, New Mexico.

47. On or about January 2, 2001, the defendant **TOBY MARTINEZ** approved payment of an invoice submitted by MARC SCHIFF on behalf of DCSW to the Bernalillo County Metropolitan Court Administrator's Office in the amount of $12,508.00.

48. On or about January 12, 2001, the defendant **TOBY MARTINEZ** caused a payment voucher reflecting the invoice described in Paragraph 47, above, to be delivered via the United States Postal Service to the Financial Control Division of the

11

New Mexico Department of Finance and Administration in Santa Fe, New Mexico.

49. On or about January 24, 2002, the defendant **TOBY MARTINEZ** approved payment of an invoice submitted by MARC SCHIFF on behalf of DCSW to the Bernalillo County Metropolitan Court Administrator's Office in the amount of $10,211.00.

50. On or about January 31, 2002, the defendant **TOBY MARTINEZ** caused a payment voucher reflecting the invoice described in Paragraph 49, above, to be delivered to the Financial Control Division of the New Mexico Department of Finance and Administration in Santa Fe, New Mexico.

51. On or about June 10, 2002, the defendant **TOBY MARTINEZ** approved payment of invoices submitted by MARC SCHIFF on behalf of DCSW to the Bernalillo County Metropolitan Court Administrator's Office in the amounts of $31,743.00, $26,453.00, and $19,311.00.

52. On or about June 12, 2002, the defendant **TOBY MARTINEZ** caused a payment voucher reflecting the invoices described in Paragraph 51, above, to be delivered via the United States Postal Service to the Financial Control Division of the New Mexico Department of Finance and Administration in Santa Fe, New Mexico.

**Overt Acts Pertaining to the A/V Contract**

53. On or about January 30, 2002, the defendant **MANNY ARAGON** made a capital outlay request to the Senate of the State of New Mexico for $3,600,000.00 for audio-visual and data-processing equipment and infrastructure for video arraignments for the Metro Court.

54. On or about June 1, 2003, the defendant **TOBY MARTINEZ** approved payment of an invoice submitted by ICS to the Bernalillo County Metropolitan Court Administrator's Office in the amount of $605,993.04.

55. On or about each of the following dates, MANUEL GUARA deposited and caused to be deposited checks, drawn upon the bank account of ICS and payable to Datcom, Inc., in the amounts listed below.

    a. February 5, 2003, in the amount of $150,000.00.

    b. March 18, 2003, in the amount of $176,207.80.

    c. May 29, 2003, in the amount of $236,680.55.

    d. July 7, 2003, in the amount of $333,280.55.

    e. July 25, 2003, in the amount of $442,647.01.

    f. August 28, 2003, in the amount of $383,660.00

    g. October 8, 2003, in the amount of $600,000.00.

    h. November 4, 2003, two checks totaling $244,018.77.

    I. November 18, 2003, in the amount of $699,501.53.

    j. December 10, 2003, in the amount of $569,000.00.

    k. January 27, 2004, in the amount of $419,269.00.

    l. April 9, 2004, in the amount of $486,745.07.

    m. August 16, 2004, in the amount of $14,340.24.

    n. September 8, 2004, in the amount of $9,261.15.

**Overt Acts Pertaining to Money Laundering**

56. On or about December 5, 2001, the defendant **MANNY ARAGON** met MARC SCHIFF, KEN SCHULTZ, the defendant **TOBY MARTINEZ** and the defendant **RAUL PARRA** at a restaurant in Albuquerque, New Mexico.

57. On or about each of the following dates, the defendant **RAUL PARRA** received funds from the bank account of Datcom, Inc., via checks in the amounts and with the payees listed below.

|     | **Date** | **Amount** | **Payee** |
| --- | --- | --- | --- |
| a. | 02/07/03 | $142,000.00 | **RAUL PARRA** |
| b. | 06/13/03 | $30,000.00 | **RAUL PARRA** |
| c. | 07/18/03 | $50,000.00 | **RAUL PARRA** |
| d. | 08/28/03 | $522,000.00 | Parra & Gagnon Consulting |
| e. | 09/29/03 | $368,500.00 | **RAUL PARRA** |
| f. | 10/28/03 | $282,000.00 | **RAUL PARRA** |
| g. | 11/24/03 | $500,000.00 | **RAUL PARRA** |
| h. | 12/22/03 | $200,000.00 | **RAUL PARRA** |
| I. | 01/05/04 | $850,000.00 | **RAUL PARRA** |
| j. | 04/14/04 | $633,753.26 | **RAUL PARRA** |

58.  On or about March 5, 2004, MANUEL GUARA signed over to the defendant **RAUL PARRA**, and the defendant **RAUL PARRA** received, three checks drawn upon the bank account of ICS, in the amounts of $36,120.00, $45,120.00, and $500.00.

59.  On or about each of the following dates, the defendant **MANNY ARAGON** caused the Law Offices of Manny Aragon to issue invoices to the defendant **RAUL PARRA** in the amounts listed below.

     a.  January 1, 2003, in the amount of $100,000.00.

     b.  June 30, 2003, in the amount of $38,500.00.

     c.  December 15, 2004, in the amount of $200,000.00.

60.  On or about August 26, 2003, the defendant **SANDRA MARTINEZ** opened a bank account in the name of "Smart Solutions, Inc."

61.  On or about August 27, 2003, the defendant **RAUL PARRA** opened a bank account in the name of "Parra & Gagnon Consulting."

14

62. On or about each of the following dates, the defendant **RAUL PARRA** transferred funds via checks drawn upon his own personal account at Bank of America in the following amounts and to the following payees.

|     | **Date** | **Amount** | **Payee** |
| --- | --- | --- | --- |
| a. | 02/06/03 | $22,000.00 | **MANNY ARAGON** |
| b. | 04/14/03 | $7,500.00 | **MANNY ARAGON** |
| c. | 06/17/03 | $16,500.00 | **MANNY ARAGON** |
| d. | 09/30/03 | $241,000.00 | Smart Solutions |
| e. | 09/30/03 | $38,500.00 | **MANNY ARAGON** Law Office |
| f. | 10/29/03 | $182,000.00 | Smart Solutions |
| g. | 10/29/03 | $29,000.00 | **MANNY ARAGON** Law Offices |
| h. | 11/30/03 | $245,000.00 | Smart Solutions |
| I. | 11/30/03 | $41,000.00 | **MANNY ARAGON** Attorney at Law |
| j. | 12/27/03 | $45,500.00 | **MANNY ARAGON** Attorney at Law |
| k. | 12/31/03 | $194,000.00 | Smart Solutions |
| l. | 03/01/04 | $50,000.00 | **ARAGON** Law Offices |
| m. | 03/04/04 | $210,000.00 | Smart Solutions |
| n. | 04/06/04 | $5,000.00 | **TOBY MARTINEZ** |
| o. | 04/07/04 | $150,000.00 | Smart Solutions |
| p. | 04/07/04 | $50,000.00 | **Aragon** Law Offices |
| q. | 06/21/04 | $82,728.00 | Smart Solutions |

63. On or about each of the following dates, the defendant **RAUL PARRA** transferred funds via checks drawn upon the account of Parra & Gagnon Consulting at First State Bank in the following amounts and to the following payees.

| | **Date** | **Amount** | **Payee** |
|---|---|---|---|
| a. | 08/28/03 | $150,000.00 | Smart Solutions |
| b. | 08/28/03 | $100,000.00 | Law Office of **MANNY ARAGON** |

64. On or about each of the following dates, the defendant **RAUL PARRA** transferred funds via checks drawn upon his account at Dain Rauscher in the following amounts and to the following payees.

| | **Date** | **Amount** | **Payee** |
|---|---|---|---|
| a. | 06/24/04 | $50,000.00 | **Aragon** Law Offices |
| b. | 08/02/04 | $5,000.00 | **Toby Martinez** |
| c. | 08/02/04 | $10,000.00 | Smart Solutions |
| d. | 09/02/04 | $5,000.00 | **Toby Martinez** |
| e. | 09/06/04 | $50,000.00 | Smart Solutions |
| f. | 10/19/04 | $5,000.00 | **Toby Martinez** |
| g. | 11/30/04 | $5,000.00 | **Toby Martinez** |
| h. | 11/30/04 | $5,000.00 | **Toby Martinez** |
| I. | 12/16/04 | $200,000.00 | Smart Solutions |
| j. | 12/29/04 | $345,949.00 | Smart Solutions |
| k. | 12/31/04 | $200,000.00 | **Aragon** Law Offices |

65. On or about each of the following dates, the defendant **SANDRA MARTINEZ** signed checks drawn upon the Smart Solutions bank account, in the amounts and to the payees specified below.

|    | **Date** | **Amount** | **Payee** |
|----|----------|------------|-----------|
| a. | 09/24/03 | $43,195.50 | Sandra Mata |
| b. | 12/30/03 | $55,850.00 | **Sandra Martinez** |
| c. | 12/30/03 | $16,755.00 | **Sandra Martinez** |
| d. | 09/09/04 | $6,000.00 | **Sandra Martinez** |
| e. | 12/30/04 | $105,650.20 | **Sandra Martinez** |
| f. | 02/18/05 | $103,815.00 | Pershing, LLC |

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH NINE

1. Paragraphs 1 through 9 of the Introduction of this Indictment, and Paragraphs 3 through 43 of Count One, above, are hereby incorporated by reference as if realleged and recited in full.

2. In or about and between the years 1999 and 2006, both dates being approximate and inclusive, in the State and District of New Mexico, in Bernalillo and Santa Fe Counties, and elsewhere, the defendants **TOBY MARTINEZ**, **RAUL PARRA** and **MANNY ARAGON**, and others known and unknown to the United States Attorney, devised a scheme and artifice to defraud and for obtaining money and property under false and fraudulent pretenses, and to defraud the State of New Mexico and the People of the State of New Mexico of their right to have their business and their affairs, and particularly the transaction of the official business of the Bernalillo County Metropolitan Court, conducted honestly and impartially, by knowingly submitting and approving for payment false invoices, excessive requests for payment, and inflated contracts and contract modifications to the State of New Mexico in connection with the design and construction of the Bernalillo County Metropolitan Court house.

3.  For the purpose of executing such scheme and artifice, on or about the dates listed below, the defendants **TOBY MARTINEZ**, **RAUL PARRA** and **MANNY ARAGON** and others caused the following documents to be mailed, delivered and received from the United States Postal Service.

| Count | Defendants | Date | Description |
|---|---|---|---|
| 2 | **TOBY MARTINEZ**<br>**MANNY ARAGON** | 05/31/02 | Payment voucher and DCSW invoice |
| 3 | **TOBY MARTINEZ**<br>**MANNY ARAGON** | 06/03/02 | DFA check for $33,219.00 payable to DCSW |
| 4 | **TOBY MARTINEZ**<br>**MANNY ARAGON** | 06/12/02 | Payment voucher and DCSW invoices |
| 5 | **TOBY MARTINEZ**<br>**MANNY ARAGON** | 06/13/02 | DFA check for $77,507.00 payable to DCSW |
| 6 | **TOBY MARTINEZ**<br>**RAUL PARRA**<br>**MANNY ARAGON** | 06/13/03 | DFA check for $605,933.04 payable to ICS |
| 7 | **TOBY MARTINEZ**<br>**RAUL PARRA**<br>**MANNY ARAGON** | 07/18/03 | DFA check for $983,508.89 payable to ICS |
| 8 | **TOBY MARTINEZ**<br>**RAUL PARRA**<br>**MANNY ARAGON** | 08/15/03 | DFA check for $625,526.48 payable to ICS |
| 9 | **TOBY MARTINEZ**<br>**RAUL PARRA**<br>**MANNY ARAGON** | 11/21/03 | DFA check for $675,470.99 payable to ICS |

In violation of violation of Title 18, United States Code, Sections 1341 and 1346.

## COUNTS TEN THROUGH TWENTY ONE

On or about each of the dates listed below, in the State and District of New Mexico, the defendants **RAUL PARRA** and **SANDRA MARTINEZ** did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign

commerce, to wit: transfer and receive funds via check as described below, which transactions involved the proceeds of specified unlawful activity, namely, Frauds and Swindles (Mail Fraud), (1) with the intent to promote the carrying on of specified unlawful activity, namely, Frauds and Swindles (Mail Fraud), and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity and, while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| Count | Defendants | Date | Description |
|-------|-----------|------|-------------|
| 10 | **Raul Parra** | 08/28/03 | Transfer of $150,000.00 to SMART SOLUTIONS |
| 11 | **Raul Parra** | 08/28/03 | Transfer of $100,000.00 to Law Office of **Manny Aragon** |
| 12 | **Sandra Martinez** | 09/24/03 | Transfer of $43,195.50 from SMART SOLUTIONS to self |
| 13 | **Raul Parra** | 11/30/03 | Transfer of $41,000.00 to **Manny Aragon** Attorney at Law |
| 14 | **Raul Parra** | 11/30/03 | Transfer of $245,000.00 to SMART SOLUTIONS |
| 15 | **Raul Parra** | 12/27/03 | Transfer of $45,500.00 to **Manny Aragon** – Attorney at Law |
| 16 | **Sandra Martinez** | 12/30/03 | Transfer of $55,850.00 from SMART SOLUTIONS to self |
| 17 | **Sandra Martinez** | 12/30/03 | Transfer of $16,755.00 from SMART SOLUTIONS to self |
| 18 | **Raul Parra** | 12/31/03 | Transfer of $194,000.00 to SMART SOLUTIONS |

| Count | Defendants | Date | Description |
|-------|------------|------|-------------|
| 19 | **Sandra Martinez** | 09/09/04 | Transfer of $6,000.00 from SMART SOLUTIONS to self |
| 20 | **Sandra Martinez** | 12/30/04 | Transfer of $105,650.20 from SMART SOLUTIONS to self |
| 21 | **Sandra Martinez** | 02/18/05 | Transfer of $103,815.00 from SMART SOLUTIONS to Pershing, LLC |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(I) and (B)(I).

## COUNTS TWENTY TWO THROUGH TWENTY SIX

On or about the dates specified below, in the State and District of New Mexico, the defendant **MANNY ARAGON** did knowingly engage and attempt to engage in monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, transfers of funds, such property having been derived from a specified unlawful activity, namely, Frauds and Swindles (Mail Fraud).

| Count | Date | Description |
|-------|------|-------------|
| 22 | 03/15/04 | Transfer of $50,000.00 via check to Pershing, LLC |
| 23 | 03/15/04 | Transfer of $186,352.00 via check to Pershing, LLC |
| 24 | 04/28/04 | Transfer of $70,000.00 via check to Pershing, LLC |
| 25 | 05/24/04 | Transfer of $25,688.06 via check to Bank of the Southwest |
| 26 | 07/08/04 | Transfer of $70,000.00 via check to Pershing, LLC |

In violation of Title 18, United States Codes, Sections 1957 and 2.

## **FORFEITURES – TOBY MARTINEZ**

Upon conviction of one or more of the offenses alleged in Counts One through Nine of this Indictment, the defendant **TOBY MARTINEZ** shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A) and 1961(1), and pursuant to Title 28, United Stated Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following assets, representing the amount of proceeds obtained as a result of the offenses, namely, Conspiracy to commit Frauds and Swindles (Mail Fraud) and Money Laundering  in violation of Title 18, United States Code, Section 371, and Frauds and Swindles (Mail Fraud) in violation of Title 18, United States Code, Sections 1341 and 1346, as set out above.

        (a)    $600,000.00 in mail fraud proceeds invested in:
                Solid Gold Hotel and Resort, Inc.
                and Passenger Vessel "Solid Gold"
                Vessel No. 999735
                8156 Kimbrook Drive
                Germantown, Tennessee

        (b)    Smart Solutions Defined Benefit Plan dtd 12/30/03
                Account No. 07Q-001377
                Financial Network Investment Corporation
                El Segundo, California
                Clearing through Pershing LLC, a BNY Securities Group Company

        (c)    A 2005 Lexus RX-330 V6 Wagon
                New Mexico License KID3302
                VIN WDBUF65J13A256102

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

    (a) cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States,  pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above

### FORFEITURES – SANDRA MARTINEZ

Upon conviction of one or more of the offenses alleged in Counts One, Thirteen, Eighteen, Nineteen, Twenty Two, Twenty Three or Twenty Four of this Indictment, the defendant **SANDRA MARTINEZ** shall forfeit to the United States pursuant to Title 18, United States Code, Sections 982, any property involved in the said violations, and, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A) and 1961(1), and Title 28, United Stated Code, Section 2461(c),  any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following asset, representing the amount of proceeds obtained as a result of the offenses, namely, Conspiracy to commit Frauds and Swindles (Mail Fraud) and Money Laundering in violation of Title 18, United States Code, Section 371, and Money Laundering in violation of Title 18, United States Code, Section 1956, as set out above.

(a)     Financial Network Investment Corporation
         Scholars Edge 529 Plan
         Account No. 01100587962

If any of the above-described forfeitable property, as a result of any act or

22

omission of the defendant(s):

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States,  pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

### FORFEITURES – MANNY ARAGON

Upon conviction of one or more of the offenses alleged in Counts One through Nine and Twenty Five through Twenty Nine of this Indictment, the defendant **MANNY ARAGON** shall forfeit to the United States pursuant to Title 18, United States Code, Sections 982, any property involved in the said violations, or, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A) and 1961(1), and Title 28, United Stated Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following asset, representing the amount of proceeds obtained as a result of the offenses, namely, Conspiracy to commit Frauds and Swindles (Mail Fraud) and Money Laundering in violation of Title 18, United States Code, Section 371, Frauds and Swindles (Mail Fraud) in violation of Title 18, United States Code, Sections 1341

and 1346, and Money Laundering in violation of Title 18, United States Code, Section

1957, as set out above.

        (a)    Account No. 07Q-001369
                    Financial Network Investment Corporation
                    El Segundo, California
                    Clearing through Pershing LLC, a BNY Securities Group Company

If any of the above-described forfeitable property, as a result of any act or

omission of the defendant(s):

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States,  pursuant to 21 U.S.C. § 853(p) as incorporated by

18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant(s) up to

the value of the forfeitable property described above.

A TRUE BILL:

/s/ _____
FOREPERSON OF THE GRAND JURY

Larry Gomez
Acting United States Attorney
_MLN_   03/27/07  5:06pm

24